# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| VS. ) | CR. NO. 06-00154-KD |
| ) | |
| GARY JONES | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the court on the defendant's Motion to Suppress (Doc. 9) and the Government's response (Doc. 12). The defendant has moved to suppress the evidence, specifically the guns forming the basis of the federal charge, that was seized pursuant to a state search warrant issued on January 19, 2005. Defendant argues that the affidavit fails to allege probable cause for the issuance of the warrant and that the guns that were seized were not within the scope of the warrant. A hearing was held on September 29, 2005 on the motion. Upon consideration the motion to suppress is **DENIED**.

Attached to the search warrant is an affidavit signed by Deputy Ronald Baggette which avers that information had been received from the neighbors of Gary Jones that Jones was seen carrying large amounts of drain cleaner, a product used in the manufacturing of methamphetamine, into his trailer and that a lot of activity and traffic was occurring in the late hours at the trailer. One neighbor also stated that he had observed Jones smoking something. The affidavit further avers that Jones was on bond for a charge of manufacturing methamphetamine and that he had an additional previous arrest for manufacturing methamphetamine. The affiant, Deputy Baggette, also noted that he had

conducted surveillance of Jones' trailer and had observed Jones without a shirt engaging in outside activities in the late hours of the night during 39 degree weather. The affiant noted that in his experience people who use methamphetamine have elevated body temperatures.

To determine whether an affidavit is adequate to support probable cause, the issuing judge or magistrate must "make a practical, common sense decision whether, given all the circumstances set forth in the affidavit..., there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). A review of the affidavit, as summarized above, shows that probable cause on the face of the affidavit is questionable. Most notably, the information gained from the informants (neighbors) is not corroborated nor is there any information about the veracity of the neighbors. U.S. v. Martin, 297 F3d 1308, 1314 (11th Cir. 2002). Thus, the court considers whether the Leon exception applies.

The Eleventh Circuit has provided the following guidance in applying the Leon exception:

> "United States v. Leon, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause. The Leon good faith exception applies in all but four limited sets of circumstances. Id. at 923, 104 S.Ct. 3405. The four sets of circumstances are as follows: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in" Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient-i.e., in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid." Id. (internal quotation marks omitted).
> The Leon good faith exception requires suppression "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 926, 104 S.Ct. 3405. The purpose of the exclusionary rule is to deter unlawful police

      misconduct; therefore, when officers engage in "objectively reasonable law enforcement activity" and have acted in good faith when obtaining a search warrant from a judge or magistrate, the Leon good faith exception applies. Id. at 919-20, 104 S.Ct. 3405.

U.S. v. Martin at 1313.  In considering whether the Leon exception applied the court may consider information known to Deputy Baggette that was not presented in the initial search warrant application or affidavit.  Id. at 1318.

     At the hearing Deputy Baggette testifed that the neighbors referenced in the affidavit were people that he had known and had been part of the small community for a long time.  Further, Deputy Baggette stated that the neighbors had told him that they also saw Jones taking what appeared to be chemical containers into the trailer, that they had witnessed Jones smoking a pipe, and that they had smelled foul odors coming from the trailer.  Baggette also elaborated on his observance of Jones' hypeactive behavior and the fact that he had on only shorts with no shoes or shirt in 39 degree weather which led him to believe that Baggette was smoking methamphetamine.  Baggette also testified that he believed he had probable cause to search and that he relied on the Judge's concurrence in this belief.

     There was no evidence presented that any of the four exceptions to Leon applies in this instance.  The defendant basically argues that the affidavit is so lacking in probable cause that it was unreasonable for Deputy Baggette to rely upon it.   The court disagrees.  Considering the contents of the affidavit and the additional information that was known by Deputy Baggette, this court cannot say that Deputy Baggette could not have harbored an objectively reasonable belief in the existence of probable cause.  Accordingly, the court finds the good faith exception applies.

     Next Defendant claims that the guns that were seized were not properly seized pursuant to the scope of the warrant.  The Fourth Amendment protects individuals "against unreasonable

searches and seizures," and requires that search warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another." Marron v. United States, 275 U.S. 192, 197 (1927).

The warrant provides that the property to be searched and seized includes documents that would show residency or ownership of property, specifically described photographs, video equipment, paraphernalia used in the process of manufacturing methamphetamine and "any and all other material evidence of violations o f the Drug Crimes Amendment Act." Thus, the defendant is correct that firearms are not specifically listed in the warrant.

In U.S. v. Smith, 918 F.2d 1501 (11th Cir. 1990), the court approved of the seizure of currency when the language regarding scope included "and other evidence relating to narcotics trafficking." The same type of catchall phrase, as noted previously, appears in the instant warrant. However, the court need not determine whether the firearm falls within the scope of the warrant because the firearm was properly seized under the plain view doctrine.

"In certain limited circumstances ... the 'plain view' doctrine permits law enforcement agents to seize evidence in plain view during a lawful search even though the items seized are not included within the warrant's scope." U.S. v. Hamie, 165 F.3d 80, 82 (1st Cir. 1999). There are two factors that must be met to establish a constitutional seizure under the plain view doctrine. First, "an essential predicate to [the seizure of evidence not within a warrant's purview is] that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." Horton v. California, 496 U.S.128, 136, 110 S.Ct. 2301 (1990). Second, the doctrine

requires that the evidence's incriminating character be "immediately apparent" to the officer. <u>Id.</u>

It is clear that the search warrant allowed for the seizure of drug related evidence. In the context of the search the officers were clearly within the warrant to look in the master bedroom (where the guns were found) for the items listed on the warrant. Thus, they did not violate the Fourth Amendment by searching the area where the firearms were found. Also the incriminating character of the firearms was apparent. Deputy Baggette testified that previous to the search he ran a criminal history check on Jones and had determined that Jones had been convicted of several felonies. In addition, the fact that he was on bond was included in the affidavit. Thus, there was sufficient evidence to believe that the defendant was prohibited from possessing the firearm. Accordingly, the seizure of these firearms was lawful.

**DONE and ORDERED** this <u>29th</u> day of September, 2006.

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**